LAWRENCE DOBBELAAR, complainant-appellant,

*v.*

JOHN EDWARD HUGHES et al., defendants-respondents.

[Submitted May 29th, 1931. Decided October 19th, 1931.]

On appeal from a decree of the court of chancery advised by Vice-Chancellor Bigelow, who filed the following opinion:

"The bill was filed to quiet title of the complainant to lands in Fort Lee, Bergen county. In 1882 John Edward Hughes purchased the premises in question at sheriff's sale. In December, 1891, he rented the premises to the complainant, who has since remained in possession. Hughes died in New York where he was a resident, November 30th, 1902. A year or so before his death he became insane and a committee was appointed for him in New York. Complainant claims title by adverse possession.

"The bill names as defendants in general terms the heirs, devisees, &c., of Hughes and certain alleged heirs by name. None of the defendants answered, except Mattie Beere Haworth, widow of Percy Beere, and their daughter, Margaret Beere. They assert that Percy Beere was the sole heir of John Edward Hughes and through him they claim title to

the premises. Mrs. Paula B. Smythe, as administratrix of her late husband, George A. Smythe, appeared during the hearing and upon her petition was admitted as party defendant. She claimed an interest in the premises under assignment to her husband by sundry alleged heirs of Hughes and was given leave formally to set forth her claim in an answer. This she has not yet done.

"Mr. Hughes died intestate. He left no widow or children, or brothers or sisters, or father or mother. He does not appear to have been in communication with any of his kindred for several years prior to his death or to have had friends who knew who were his relations. His personal estate was taken in charge by the public administrator in New York and was the subject of litigation between various claimants for many years. It has finally been proved that his nearest of kin at the time of his death were an uncle, Percy Beere, already mentioned, and several cousins scattered through the world. Mr. Beere was living in St. Louis in 1902 and died there October 4th, 1904, intestate, leaving his wife, the defendant Mattie Haworth, and his daughter, the defendant Margaret Beere, an infant then three months old, as his only heirs at law. There is mention in the proofs of two maternal aunts of Mr. Hughes, Martha and Maria Beere, who emigrated to Australia from Ireland prior to 1850 and who do not seem to have been since heard from. The presumption is that they predeceased Mr. Hughes.

"The descent of the title to this property is covered by section 6 of 'An act directing the descent of real estate,' as amended by *P. L. 1894 p. 209*. By this act the uncle Percy Beere took title to the premises to the exclusion of his nieces and nephews, the cousins of Mr. Hughes. *Schenck* v. *Vail, 24 N. J. Eq. 538; Bailey* v. *Ross, 32 N. J. Eq. 544*.

"Mrs. Smythe proved assignments to her husband from a number of the alleged heirs, but not from Percy Beere or the defendants Mrs. Haworth or Miss Beere. In her argument she speaks of a lost assignment executed by them, but she has not proved that such an assignment was ever made. Her claim, therefore, is not established.

"The title of the complainant requires more extended consideration. He paid rent of $8 a month to Mr. Hughes and later to his committee until the death of Mr. Hughes and indeed for some months thereafter until he heard of the death. In absence of proof to the contrary he is presumed to have been a tenant from year to year during the lifetime of Mr. Hughes. By remaining in possession of the premises after the death of Mr. Hughes he became by operation of law the tenant of Mr. Beere and this tenancy is presumed to have continued until some action was taken to terminate it. *35 C. J. 967.* He never gave notice of his intention to quit and never received notice from the landlord. Probably he never heard of Mr. Beere until after the latter's death, and so far as appears Mr. Beere never knew of Mr. Dobbelaar's existence. Complainant apparently stopped paying rent merely because he did not know whom to pay and because no one demanded the rent who had authority to do so. The following passage from examination of the complainant is significant:

" '*Q.* Now, has anyone ever claimed this property—tried to get this property away from you? *A.* Why, Smythe came there and said he had found some heirs, and he told me a lot of stuff, and I considered it a kind of ghost story. *Q.* Well, what did you do? *A.* I couldn't say anything to him. I thought that thing would come up before the court eventually and I couldn't go to work—if someone came along and said, "why, I own this" or "I am related" or something of that kind—I couldn't go by anything of that kind. *Q.* Mr. Dobbelaar, did onyone else come to see you about this property? *A.* Edmond Hughes came from Hamburg. *Q.* Who did he say he was? *A.* He said he was a half .brother. *Q.* What did he say to you? *A.* Well, he wanted to sell it to me? *Q.* What did you do? *A.* Well, I didn't give him any satisfaction. I don't remember how it ended. *Q.* Now, did anyone else see you about it? *A.* No, I don't remember anybody else.'

"The date that Mr. Smythe called on complainant does not appear. John Edmond Hughes went to see him about 1907. In 1915 Mrs. Haworth and Miss Beere began an

action of ejectment in the New Jersey supreme court against complainant. He answered with a general denial of the complaint and without setting forth his own title. The action was dismissed in 1926 for lack of prosecution.

"Complainant testified as follows: 'Well, we [complainant and Mr. Hughes] were talking on and off about my buying the place and his selling it to me, and then I commenced to think about moving, and then he didn't like the idea of moving without giving him three or six months' notice, and then he came over afterwards, and he says, "I could have sold the place, but I want you to have it," and that that was the last I saw of him. And then he got sick, and then I heard afterwards that he was dead.' Complainant further testified that after this conversation he continued to pay rent, but that after Mr. Hughes' death he considered that he, complainant, owned the property and that his title sprung from the conversation above quoted. This secret attitude on the part of the complainant was insufficient to make his possession adverse to the title of his landlord. *Leport* v. *Todd, 32 N. J. Law 124; N. J. Title, &c., Co.* v. *Bowyer, 98 Atl. Rep. 838.* He did nothing and said nothing which might constitute notice to his neighbors or to the world at large, or to the true owners of the property, that he claimed ownership or the right to possession by any title other than that of tenant. I find that the statute of limitations did not begin to run in complainant's favor until, at earliest, October 4th, 1904, the date of the death of Percy C. Beere. On that date title descended to the infant Margaret Beere, and during her minority the statute did not run as against her.

"The claim of the complainant cannot be sustained. There should be a decree establishing the title of the defendant Miss Beere subject to the dower of her mother.

"These defendants have filed a counter-claim for an accounting by the complainant for the value of his use and occupancy of the premises. Their laches debar them from this relief if they are otherwise entitled to it. The counter-claim should be dismissed."

*Messrs. Seufert & Elmore,* for the appellant.

*Mr. Frank W. Heilenday,* for the respondents.

PER CURIAM.

The decree appealed from will be affirmed, for the reasons given in the opinion filed by Vice-Chancellor Bigelow.

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, PAR-KER, CAMPBELL, LLOYD, CASE, BODINE, DALY, DONGES, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, JJ. 14.

*For reversal*—None.